UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EVANGALINE ROSCOE,

                              Plaintiff,

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.
_____

DECISION & ORDER

17-CV-6502P

## PRELIMINARY STATEMENT

        Plaintiff Evangaline Roscoe ("Roscoe") brings this action pursuant to Section
205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a
final decision of the Commissioner of Social Security (the "Commissioner") denying her
application for Supplemental Security Income ("SSI") and Disability Insurance Benefits
("DIB").  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this
case by a United States magistrate judge.  (Docket # 12).

        Currently before the Court are the parties' motions for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 8, 10).  For the
reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim
for further administrative proceedings consistent with this decision.

# BACKGROUND

## I.      Procedural Background

On February 19, 2014, Roscoe protectively filed for a period of disability and DIB and SSI, alleging disability beginning on January 23, 2011, due to a right knee and a right ankle injury, anxiety, depression, and post-traumatic stress disorder ("PTSD").  (Tr. 12, 73, 85).[1] On June 11, 2014, the Social Security Administration ("SSA") denied Roscoe's claim for benefits, finding that she was not disabled.  (Tr. 99-106).  Roscoe requested and was granted a hearing before an administrative law judge (Tr. 108-10, 111-22, 133-52), which occurred on July 13, 2016 (Tr. 41-72).  At the hearing, Roscoe's motion to amend her claim to request a closed period of benefits – from March 6, 2014, through June 22, 2015 – was granted.  (Tr. 12, 45-46). In a decision dated August 17, 2016, Administrative Law Judge Robert E. Gale (the "ALJ") found that Roscoe was not disabled and was not entitled to benefits.  (Tr. 12-25).

On May 31, 2017, the Appeals Council denied Roscoe's request for review of the ALJ's decision.  (Tr. 1-3).  Roscoe then commenced this action on July 27, 2017, seeking review of the Commissioner's decision.  (Docket # 1).

## II.      Relevant Medical Evidence[2]

### A.      Treatment Records

#### 1.      Unity Mental Health

Roscoe was admitted to mental health treatment at Unity Hospital in Rochester, New York, on March 6, 2014.  (Tr. 278).  On March 18, 2014, Raja V. Rao ("Rao"), MD,

---

[1]  The administrative transcript shall be referred to as "Tr. __."

[2]  Those portions of the treatment records that are relevant to this decision are recounted herein.  Roscoe does not argue that the ALJ erred in his evaluation of her physical limitations; thus, the summary of relevant records pertains only to Roscoe's mental limitations.

conducted a psychiatric evaluation of Roscoe. (Tr. 278-82). Roscoe's chief complaints upon presentation were anxiety and mood problems. (Tr. 278). Rao noted that Roscoe had started to experience depression and PTSD following an "intentional car accident DWI causing serious injury to [Roscoe] and another man in another car," which had occurred in 2012. (Tr. 278, 304). Roscoe's symptoms upon presentation included decreased interest/pleasure, feelings of guilt and worthlessness, and decreased appetite, the severity of which Rao asserted was moderate. (Tr. 278). Rao noted that Roscoe had no apparent problems with concentration, energy level, psychomotor function, anger, or psychotic symptoms. (*Id.*). Regarding Roscoe's mental status, Rao indicated that her appearance and behavior were appropriate, motor movements were unremarkable, eye contact was average, speech was normal, thought process was logical and coherent, thought content was "guilt," thought perceptions were normal, mood was anxious and depressed, affect was depressed and tearful, and that she was alert, oriented, and had good insight and judgment. (Tr. 281). Rao diagnosed Roscoe with "[PTSD], major depressive disorder recurrent, moderate severity, bereavement[,]" noting that Roscoe "went through a difficult time dealing with [her] mother's death and [a] work related injury leading to serious suicide attempt DWI causing injury to self and another man." (*Id.*).

Roscoe attended a follow-up appointment with Rao on April 1, 2014. (Tr. 271-73). Rao's mental status examination findings were the same as on March 18. (Tr. 272). Rao diagnosed Roscoe with PTSD and noted that she continued "to go through the grieving for her mother and loss of her own independence." (*Id.*).

Roscoe also presented to Amy K. Piccarreto ("Piccarreto"), LMSW, on April 1, 2014, for an individual therapy session to address Roscoe's symptoms of depression, anxiety, guilt, and loss. (Tr. 274-77). At the session, Roscoe and Piccarreto focused on Roscoe's

depressive symptoms associated with loss and discussed Roscoe's feelings about her mother's death. (*Id.*). Piccarreto noted that Roscoe presented as tearful and depressed. (Tr. 275). Roscoe's appearance and behavior were appropriate, motor movements were unremarkable, eye contact was intermittent, speech and thought perceptions were normal, thought form was logical and coherent, thought process was helplessness, mood was depressed and sad, affect was mood congruent, and she was alert, oriented, and had good insight and judgment. (*Id.*). Piccarreto opined that Roscoe was a moderate suicide risk. (Tr. 276).

Roscoe was discharged from Unity Mental Health on September 9, 2014. (Tr. 394-400). In Roscoe's discharge summary, Johanna Bond ("Bond"), MS, MHC, indicated that Roscoe had engaged in "two of four" treatment sessions with Piccarreto related to depression and PTSD. (Tr. 394). Bond noted that although Roscoe "demonstrated initial progress in therapy," she was "not consistent in her engagement in treatment." (*Id.*). Although Unity sent Roscoe a letter of concern, Roscoe did not return to treatment at Unity. (*Id.*). Thus, Roscoe was discharged. (*Id.*).

## 2.    **Strong Behavioral Health**

In 2015, Roscoe began mental health therapy treatment at Strong Behavioral Health with psychiatric therapist Alexis M. Curllin ("Curllin"). At a therapy session on May 5, 2015, Curllin noted that Roscoe's attitude was cooperative, motor activity was normal, eye contact was avoidant, darting, and indirect, speech was soft, affect was full range, mood was dysphoric and sad, thought process was circumstantial and goal-directed, thought content was preoccupied, perception and concentration were normal, and she was alert, oriented, and had good insight and judgment, intact memory, and average intelligence. (Tr. 627). Curllin and Roscoe discussed treatment goals and "life worth living goals," among other things. (*Id.*).

Roscoe treated with Curllin again on May 13, 2015. (Tr. 627-29). Roscoe's mental status was the same as noted in the May 5 session. (Tr. 628). Roscoe reported that she completed forty job applications in one day, which decreased her anxiety. (Tr. 629). Roscoe also reported that she had received four job interviews, which "pleased" her. (*Id.*). On May 20, 2015, Curllin noted that Roscoe's mental status remained the same, and Roscoe reported that she had participated in at least one job interview. (Tr. 630).

On May 29, 2015, Curllin indicated that Roscoe's affect had decreased in range, that she was dysphoric and sad, and that she had preoccupations and negative rumination. (Tr. 631-32). Curllin also reported that although Roscoe continued to deny any suicidal ideation, Roscoe "was having thoughts about what was the use of trying so hard." (Tr. 632). Curllin noted that Roscoe was "sad and angry" that day "because she did not get the job." (*Id.*). Roscoe felt "disappointed that she [was] angry with herself for having had such high expectations. [Roscoe believed] her criminal record deterred them from hiring her given that the interview went very well." (*Id.*). Curllin indicated, however, that the session ended on a "positive note." (*Id.*).

Roscoe met with Curllin again on June 2, 2015. (Tr. 632-34). Her mental status reflected a decreased range in her affect, dysphoric and sad mood, circumstantial thought process, and preoccupied thought content. (Tr. 633). Roscoe continued to struggle "with managing the disappointment she felt as a result of not being hired." (Tr. 634). She also noted that her appetite had decreased and she "was spending most of her time in bed." (*Id.*).

On June 8, 2015, Curllin noted a slight improvement in Roscoe's mental status. (Tr. 635). Although Roscoe's eye contact remained avoidant, darting, and indirect, her affect was full range, her mood was neutral, her thought process was circumstantial and goal-oriented,

and her thought content had no unusual themes. (Tr. 635). Roscoe reported that she "was more at peace with not getting the job she hoped for," had "an improvement in mood and thought," and had been "experiencing less PTSD symptoms." (*Id.*). Roscoe maintained the same mental status upon examination on June 15, 2015. (Tr. 637). However, Roscoe reported that she was "angry, sad and baffled about the injustice that she [was] experiencing" in the job market, based on the number of rejections she had received. (*Id.*).

On June 22, 2015, Curllin noted that Roscoe's mood was "lively." (Tr. 642). Curllin and Roscoe discussed transitioning to a new provider. (Tr. 642-43). During that discussion, it was noted that Roscoe was "doing great" and that "continuing therapy may not be necessary at this point." (*Id.*). Roscoe reported that she was "more accepting of her situation, in that she [was] more patient with the process of her job search as she continues to write new applications." (Tr. 643). Roscoe was then discharged from Strong Behavioral Health. (*Id.*).

## B. **Medical Opinion Evidence**

### 1. **T. Harding, PhD**

On April 22, 2014, state agency consultant, T. Harding ("Harding"), PhD, completed an assessment of Roscoe's impairments. (Tr. 73-84). In his assessment, Harding noted that a further consultative examination was required because the "evidence as a whole, both medical and non-medical, [was] not sufficient to support a decision on the claim." (Tr. 77). Despite that recommendation, no consultative examination was conducted.

Harding's report reflects that he had only reviewed mental status examinations from Unity Mental Health, specifically from March 6, 2014, through April 1, 2014; based on that review, Harding noted that Roscoe's mental health symptoms improved during that period. (Tr. 78). Harding opined that Roscoe had "mild" restrictions of activities of daily living, "mild"

difficulties maintaining social functioning, "mild" difficulties in maintaining concentration, persistence or pace, and "no[]" repeated episodes of decompensation. (Tr. 79). Harding's report does not include a separate mental Residual Functional Capacity ("RFC") assessment. (Tr. 84). Harding found that Roscoe was not disabled. (*Id.*).

## DISCUSSION

### I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1)    whether the claimant is currently engaged in substantial gainful activity;

> (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

> (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform her past work; and

(5)     if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

Moreover, where a claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique." *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." *Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (citing 20 C.F.R. § 404.1520a(c)(3) (2016)). "If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must reflect application of the technique, and include a specific finding as to the degree of limitation in each of the four functional areas." *Lynn v. Colvin*, 2017 WL 743731 at *2 (alterations and quotations omitted).

A.     **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 12-25). At step one of the process, the ALJ found that Roscoe had not

engaged in substantial gainful activity from March 6, 2014, through June 22, 2015 – the requested closed period. (Tr. 14). At step two, the ALJ concluded that Roscoe had the severe impairments of degenerative changes of the bilateral knees, obesity, depression, and PTSD. (Tr. 14-15). At step three, the ALJ further found that Roscoe did not have an impairment, or combination of impairments, that met or medically equaled any of the listed impairments in Appendix 1 of Subpart P of Part 404 of the relevant regulations. (Tr. 14-17). Specifically, in applying the required special technique, the ALJ concluded that Roscoe had "mild restrictions" in activities of daily living, "moderate difficulties" in social functioning, "mild difficulties" with regard to concentration, persistence or pace, and no episodes of decompensation. (Tr. 16-17).

Next, the ALJ determined that Roscoe retained the RFC to lift ten pounds occasionally and less than ten pounds frequently, sit for six hours in a workday, stand for forty-five minutes at a time and four hours in a workday, and walk for thirty minutes at a time and four hours in a workday. (Tr. 17). The ALJ also found that Roscoe could push and/or pull ten pounds occasionally, and less than ten pounds frequently, could not climb ladders, ropes, scaffolds, or crawl, but could climb stairs and ramps frequently and squat occasionally. (*Id.*). In addition, Roscoe had no manipulative or environmental limitations, could understand, remember, learn new and perform simple, routine tasks, make appropriate decisions, interact with the public and get along with supervisors and coworkers. (*Id.*). Finally, the ALJ determined that Roscoe would be able to complete a workday and workweek without interruptions from psychologically-based symptoms, however, she would be off-task for five to seven percent of the workday. (Tr. 17-18).

At step four, the ALJ found that Roscoe was unable to perform any past relevant work. (Tr. 19). At step five, the ALJ relied on the testimony of vocational expert Josiah L.

Pearson (the "VE") and found that based on Roscoe's age, education, work experience, and RFC, she could adjust to working at other jobs that exist in significant numbers in the national economy. (Tr. 20). Specifically, the ALJ accepted the VE's testimony that Roscoe could perform the jobs of semi-conductor loader (DOT # 726.687-030), touch-up screener (DOT # 726.684-110), and addresser (DOT # 209.587-010). (Tr. 20-21). Accordingly, the ALJ found that Roscoe was not disabled. (Tr. 21).

> ### B. Roscoe's Contentions

Roscoe contends that the ALJ erred in formulating that portion of the RFC relating to her mental impairments and that his determination that she is not disabled is thus not supported by substantial evidence. (Docket # 8-1 at 12-13). First, Roscoe argues that the record contains an obvious gap, as there are no medical opinions concerning her functional limitations associated with her mental impairments. (*Id.* at 14-16). Next, Roscoe contends that the ALJ "cherry-picked" information from Roscoe's mental health treatment notes, relying upon only the information supportive of his finding of non-disabled. (*Id.* at 16-19). Finally, Roscoe argues that the ALJ's RFC was not based on substantial evidence because, in the absence of a medical opinion on the functional limitations resulting from Roscoe's mental health impairments, the ALJ improperly "fashion[ed] the RFC out of his own medical interpretation of the records." (*Id.* at 20-22).

## II.  Analysis

"Before determining whether the Commissioner's final decision is supported by substantial evidence . . . [,] the court must first be satisfied that the ALJ provided the plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the

administrative record." *Hooper v. Colvin*, 199 F. Supp. 3d 796, 806 (S.D.N.Y. 2016) (quotations omitted). Therefore, I turn first to Roscoe's contention that a gap existed in the medical record because the ALJ did not obtain a medical opinion regarding the functional limitations associated with Roscoe's mental impairments, specifically her depression and PTSD. (Docket # 8-1 at 14-16).

In support of this argument, Roscoe challenges Harding's consultative examination, to which the ALJ gave "great weight," as "stale and based on an incomplete record." (*Id.* at 15). Based on the date that Harding signed his report (April 22, 2014), Roscoe reasons that Harding's review of her mental health records "would have included [her] initial evaluation at Unity Mental Health at Pinewild and one individual therapy session" and his assessment would have been "performed and filed well before [Roscoe] began treating in nine consecutive individual therapy sessions at Strong Behavioral Health." (*Id.* at 16) (citations omitted). Thus, Roscoe asserts, an "obvious gap" existed in the record, which the ALJ had a duty, but failed, to develop. (*Id.*).

The Commissioner argues that the ALJ was not required to order a consultative examination because "Dr. Harding's April 22, 2014 opinion . . . was generally consistent with the record as a whole, including the limited mental health treatment and substantially normal clinical findings, both prior to and after the date that Dr. Harding review the record." (Docket # 10-1 at 23-24). In the Commissioner's view, the record was sufficient for the ALJ to assess Roscoe's RFC without the need for a formal medical opinion of Roscoe's functional limitations. (*Id.* at 20-21).

As an initial matter, I agree with Roscoe that Harding's opinion was based upon an incomplete record of Roscoe's mental health treatment. Harding, a non-treating and

non-examining source, had available only records from Roscoe's mental treatment at Unity in March and April 2014; he did not have any records from Strong Behavioral Health because his review predated that treatment.  Based on the relatively few treatment notes from March and April 2014, Harding concluded that Roscoe's mental health impairments were non-severe (Tr. 78), that she had "mild" restrictions of activities of daily living, "mild" difficulties maintaining social functioning, "mild" difficulties in maintaining concentration, persistence or pace, and "no[]" repeated episodes of decompensation (Tr. 79).  Indeed, Harding himself apparently acknowledged the limited record upon which his opinions were based by opining that a further consultative examination was required because the "evidence as a whole, both medical and non-medical, [was] not sufficient to support a decision on the claim."[3]  (Tr. 77).  Moreover, and significantly, Harding's report does not even include a mental RFC assessment.  Accordingly, Harding's report did not constitute substantial evidence to support the ALJ's mental RFC.  *See, e.g.*, *Hooper v. Colvin*, 199 F. Supp. 3d at 815 ("[t]he ALJ appropriately gave little weight to the two opinions in the record from non-examining state psychologists because they did not account for the entirety of [claimant's] medical record, which was completed later in the adjudicative process"); *Jones v. Colvin*, 2015 WL 5126151, *4 (W.D.N.Y. 2015) ("because the ALJ concluded that [p]laintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying [p]laintiff's mental limitations rendered the record incomplete"); *Stackhouse v. Colvin*, 52 F. Supp. 3d 518, 521 (W.D.N.Y. 2014) ("[consultative psychiatrist's] opinion was the only one which the ALJ afforded 'great weight,' and it was used as the primary basis for the ALJ's RFC finding . . . [;]

---

[3]  It is not clear who authored this section of the report, although the entire report was co-signed by Harding and B. Bunts, the single decision-maker.  (Tr. 84).

[b]ecause [it] was itself based upon an incomplete and insufficient record, the ALJ's decision cannot be said to rest upon substantial evidence[;] [a]t the very least, the ALJ should have sought a conclusive determination from a medical consultant who was able to evaluate the plaintiff's entire medical record, given the absence of other evidence in the record by treating or examining sources specific to plaintiff's non-exertional limitations") (internal quotation omitted).

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding." *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013). In furtherance of his duty to develop the record, "the ALJ may be *required* to order a consultative examination when necessary to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim." *Tanner v. Colvin*, 2015 WL 6442575, *5 (W.D.N.Y. 2015) (quotations omitted). "It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) (quotations omitted); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) (an ALJ is "not required to order a consultative examination if the facts do not warrant or suggest the need for it"). Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Estrada v. Comm'r of Soc. Sec.*, 2014 WL 3819080, *3-4 (S.D.N.Y. 2014).

Although an ALJ has a general duty to develop the record, including obtaining medical opinions of the claimant's functional capabilities, the "regulatory language provides

ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'"

*Rouse v. Colvin*, 2015 WL 7431403, *5 (W.D.N.Y. 2015) (quoting *Sickles v. Colvin*, 2014 WL

795978, *4 (N.D.N.Y. 2014)). In any event, "it is not *per se* error for an ALJ to make the RFC

determination absent a medical opinion," *Lewis v. Colvin*, 2014 WL 6609637, *6 (W.D.N.Y.

2014) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013)), "especially where

the medical evidence shows relatively minor . . . impairments, [such that] an ALJ permissibly

can render a common sense judgment about functional capacity even without a physician's

assessment." *Id.* (quotations omitted). The salient question before the Court is whether the

record "contains sufficient evidence from which an ALJ can assess the [plaintiff's RFC]." *Id.*

(quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x at 34).

   In this case, the record appears to contain all of Roscoe's mental health treatment

notes from the relevant closed period, including the treatment notes from Unity Mental Health

from early 2014 and the treatment notes from Strong Behavioral Health from April through June

2015. (Tr. 271-82, 625-38, 642-43, 662-64). As described above, those records generally

demonstrate that Roscoe suffered from symptoms of depression and anxiety, and experienced

difficulty sleeping. (*Id.*). Despite these ongoing symptoms, one of Roscoe's main goals during

this period was to obtain employment – a goal that apparently was supported and encouraged by

her mental health therapist. (Tr. 625-38, 642-43). Indeed, many of Roscoe's therapy sessions

focused on her efforts to obtain employment and processing her disappointment and frustration

with the process. (*Id.*). Indeed, as Roscoe testified, she attributed some of her mental health

symptoms to her unemployment. (Tr. 60-61).

   Whether the record in this case – which appears to include the entirety of

Roscoe's limited mental health treatment records for the relevant period – provides sufficient

information for the ALJ to render a common-sense RFC determination in the absence of a medical opinion assessing her mental work-related limitations is a close question. *Compare Desnerck v. Berryhill*, 2018 WL 300109, *3 (W.D.N.Y. 2018) ("[t]he record does not contain any medical opinion evidence regarding the impact of plaintiff's mental impairments on his ability to function, and there is no indication that the ALJ sought to remedy this obvious gap in the record . . . [;] the ALJ failed to obtain a consultative psychiatric examination of plaintiff, even though plaintiff's treating physician had expressly opined that a psychiatric evaluation was necessary one month before the administrative hearing[;] [u]nder these circumstances, the [c]ourt concludes that the ALJ failed to discharge his duty to develop the record regarding the severity of plaintiff's mental impairments, and that remand for further proceedings is necessary"); *Morales v. Colvin*, 2017 WL 462626, *2 (D. Conn. 2017) ("[t]he ALJ does not identify any opinion evidence addressing [p]laintiff's functional limitations based on her conditions *in combination*[;] [w]hile the record is replete with treatment notes, these notes do not (nor would one expect they should) reflect [p]laintiff's limitations, particularly as to how her conditions, in combination, affect her ability to work on a sustained basis[;] [i]n all, the ALJ had before him a long record with a relative paucity of opinion evidence[;] [a]s a result, the [c]ourt does not see how the ALJ came to the assessed RFC"); *Hooper*, 199 F. Supp. 3d at 816 ("[a]lthough the record is extensive, the absence of any up-to-date medical opinion assessing [claimant's] mental functional limitations remains an 'obvious gap'"); *Ramos v. Colvin*, 2015 WL 925965, *10, 11 (W.D.N.Y. 2015) (noting that although the ALJ "thoroughly reviewed and discussed the treatment records," the absence of a medical source statement or consultative examination report "to assist him in translating the treatment notes into an assessment of [claimant's] mental capacity for work-related activities . . . [resulted in] the ALJ "us[ing] his own lay opinion to

determine [claimant's] mental RFC"; "remand is appropriate for the ALJ to obtain a mental RFC assessment or medical source statement from an acceptable medical source concerning [claimant's] mental capabilities"); *Haymond v. Colvin*, 2014 WL 2048172, *7-8 (W.D.N.Y. 2014) ("no psychiatrist, psychologist, social worker, or counselor examined [p]laintiff and gave an opinion regarding the functional limitations caused by her multiple and long-standing mental impairments[;] [t]he only mental RFC assessment in the record was completed by a non-examining state disability medical consultant . . . [;] [b]ecause the record contains no assessment from an examining provider, much less a treating source, quantifying [p]laintiff's mental limitations, the [c]ourt finds that the record was not sufficiently complete for the ALJ to render an accurate RFC") *with Countryman v. Colvin*, 2016 WL 4082730, *13 (W.D.N.Y. 2016) (ALJ was permitted to make common sense judgment regarding plaintiff's reaching limitation despite absence of medical opinion assessing that limitation where record showed relatively minor impairment and where "lack of . . . evidence in the record support[ed] a more restrictive limitation"); *Lay v. Colvin*, 2016 WL 3355436, *7 (W.D.N.Y. 2016) (ALJ was permitted to consider medical records and use common sense judgment to arrive "at a reasonable conclusion regarding [p]laintiff's RFC, as permitted by the [r]egulations"); *Rouse v. Colvin*, 2015 WL 7431403 at *6 (no *per se* error where record did not contain "recent medical opinion that specifies [p]laintiff's specific functional abilities, or evidence an RFC report was requested" where "RFC determination was based on substantial evidence because the record contained ample evidence for the ALJ to make a finding on disability"); *Schade v. Colvin*, 2014 WL 4204946, *23 (E.D. Mo. 2014) (ALJ did not err by failing to order consultative examination to assess plaintiff's mental capabilities where plaintiff did not include allegations of depression or anxiety in her application and did not testify to any mental impairments that limited her ability to

work); *Gillard v. Colvin*, 2013 WL 954909, *3 (N.D.N.Y. 2013) (ALJ did not err in failing to order consultative psychological exam where plaintiff sought sporadic treatment for mental health issues and did not identify any limitations caused by depression in application or hearing testimony); *Bianco v. Astrue*, 2012 WL 441147, *11 (E.D. Mo. 2012) (ALJ did not err by failing to obtain medical opinion assessing plaintiff's functional capacity; "[w]ith respect to plaintiff's obesity and alleged depression, plaintiff and his physicians have not identified additional functional limitations attributable to either condition[;] [u]nder these circumstances, the ALJ was not required to obtain additional consultative examinations"). Even assuming the records were sufficient, however, the ALJ's decision strongly suggests that he did not consider the entire record in rendering his decision.

In his decision, the ALJ discussed Roscoe's mental health treatment at length, but did not discuss or cite to the majority of the treatment notes from Strong Behavioral Health contained in Exhibit 11F.[4]  Rather, the mental health treatment notes cited by the ALJ were limited to the Unity Mental Health record and a single treatment note from Strong Behavioral Health contained in Exhibit 12F.  (*See generally* Tr. 12-21).  Thus, the bulk of the mental health treatment notes were neither discussed by the ALJ nor cited by him in support of his conclusions. While there is no question that an ALJ is not required to discuss every piece of evidence submitted, and his failure to do so does not necessarily demonstrate that he did not consider the evidence, *see Santos v. Astrue*, 709 F. Supp. 2d 207, 211 (S.D.N.Y. 2010), the ALJ's failure here to discuss the Strong Behavioral Health records in his decision, which cited the other mental

---

[4]  The ALJ did cite to Exhibit 11F in his decision, but only in connection with the primary care physician's records contained in that exhibit.  (Tr. 19).  The fact that the exhibit contained treatment notes from multiple providers further supports my conclusion that the ALJ apparently failed to appreciate that the mental health treatment notes were contained within that exhibit.

health treatment notes of record, leads me to conclude that the ALJ likely overlooked or ignored the Strong mental health treatment notes.

The limited treatment notes reviewed by the ALJ – representing a total of three mental health treatment sessions – were plainly insufficient to permit him to render an RFC assessment in the absence of any medical opinion assessing Roscoe's work-related capabilities. Not only could the additional mental health treatment records have affected the ALJ's RFC determination, but they also might have altered his credibility assessment, as well as his assessment of the proper weight to be afforded to the medical opinion authored by Harding. Under such circumstances, I conclude that remand is appropriate to permit the ALJ to consider the entirety of the Strong Behavioral Health treatment notes and to determine whether such consideration affects the determination of disability. *See Hall v. Astrue*, 2014 WL 4924009, *10 (W.D.N.Y. 2014). On remand, the ALJ should consider whether additional information, such as a medical opinion from Roscoe's then-treating mental health counselor or an independent medical source who has reviewed the entirety of her treating history during the closed period, is necessary or would be helpful to the RFC assessment.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Roscoe's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 21, 2018